UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BOOTH FAMILY TRUST, on Behalf of Itself and All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | Civil Action No. 4:17-cv-01995 |
| v. | § § | JURY TRIAL DEMAND |
| ATWOOD OCEANICS, INC., ROBERT J. SALTIEL, GEORGE S. DOTSON, JACK E. GOLDEN, HANS HELMERICH, JEFFREY A. MILLER, JAMES R. MONTAGUE, and PHIL D. WEDEMEYER, | § § § § § § § | |
| Defendants. | § § | |

## CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS

Plaintiff Booth Family Trust ("Plaintiff"), by and through its undersigned counsel, for its complaint against Defendants, alleges upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

NATURE OF THE ACTION

1. This is a class action brought on behalf of the public stockholders of Atwood Oceanics, Inc. ("Atwood" or the "Company") against Atwood and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated thereunder and to enjoin the vote on a proposed transaction, pursuant to which Atwood will be acquired by Ensco plc ("Ensco") through its wholly owned subsidiary Echo Merger Sub LLC ("Merger Sub") (the "Proposed Transaction").

2.     On May 30, 2017, Atwood and Ensco issued a joint press release announcing that they had entered into an agreement and plan of merger (the "Merger Agreement").  Under the terms of the Merger Agreement, Atwood stockholders will receive 1.60 Class A ordinary shares of Ensco per Atwood share, valued at approximately $10.72 per Atwood share.

3.     On June 16, 2017, defendants filed a joint Registration Statement on Form S-4 (the "Registration Statement") with the SEC in connection with the Proposed Transaction.  The Registration Statement, which recommends that Atwood stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections, utilized by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in its financial analyses; (ii) the valuation analyses prepared by Goldman Sachs in connection with the rendering of its fairness opinion; and (iii) the background process leading up to the Proposed Transaction.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Atwood stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4.     In short, unless remedied, Atwood's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder

pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Atwood is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Atwood common stock.

9. Atwood is a Texas corporation and maintains its principal executive offices at 15011 Katy Freeway, Suite 800, Houston, Texas, 77094. Atwood's common stock is traded on the New York Stock Exchange under the ticker symbol "ATW."

10. Defendant Robert J. Saltiel ("Saltiel") has been President and Chief Executive Officer ("CEO") of the Company since 2009 and a director of the Company since 2010.

11. Defendant George S. Dotson ("Dotson") has been Chairman of the Board since 2011 and a director of the Company since 1988.

12. Defendant Jack E. Golden ("Golden") has been a director of the Company since 2009.

13.     Defendant Hans Helmerich ("Helmerich") has been a director of the Company since 1989.

14.     Defendant Jeffrey A. Miller ("Miller") has been a director of the Company since 2013.

15.     Defendant James R. Montague ("Montague") has been a director of the Company since 2006.

16.     Defendant Phil D. Wedemeyer ("Wedemeyer") has been a director of the Company since 2011.

17.     Defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18.     Ensco is a public limited company organized in England and Wales, with its principal executive offices located at 6 Chesterfield Gardens, London, England W1J5BQ.

19.     Merger Sub is a Texas limited liability company and a wholly owned subsidiary of Ensco.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Atwood common stock (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21.     This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is so numerous that joinder of all members is

impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of May 26, 2017, there were approximately 80,519,422 shares of Atwood common stock outstanding. All members of the Class may be identified from records maintained by Atwood or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

22.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

23.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

24.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

25.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

Background of the Company

26.     Atwood is a leading offshore drilling contractor engaged in the drilling and completion of exploratory and developmental oil and gas wells.  The Company currently owns nine mobile offshore drilling units and is constructing two ultra-deepwater drillships.  Atwood's mobile offshore drilling units and related equipment comprising its offshore rig fleet operate in a single, global market for contract drilling services and are often redeployed globally due to changing demands of the Company's clients.  The offshore drilling markets where Atwood currently operates include the U.S. Gulf of Mexico, the Mediterranean Sea, offshore West Africa, offshore Southeast Asia, and offshore Australia.

27.     Each type of drilling rig is designed for different purposes and applications, for operations in different water depths, bottom conditions, environments and geographical areas, and for different drilling and operating requirements.  The Company classifies rigs with the ability to operate in 5,000 feet of water or greater as deepwater rigs, and rigs with the ability to operate in 7,500 feet of water or greater as ultra-deepwater rigs.  Atwood's drilling contracts are obtained either through direct negotiation with clients or by submitting proposals in competition with other contractors.  The Company's contracts vary in their terms and rates depending on the nature of the operations to be performed, duration of the work, amount and type of equipment and services provided, geographic areas involved, market conditions and other variables.

The Sale Process

28.     On February 27, 2015, Defendant Saltiel met with the CEO of a party referred to in the Registration Statement as "Company A."  Company A's CEO indicated interest in a strategic combination with Atwood, should Atwood ever have interest in doing a transaction.

29.	Defendant Saltiel subsequently met with the CEO of Company A on September 9, 2016 and indicated to the CEO of Company A that the Board might be open to considering a combination between the two parties.  The Registration Statement fails to disclose whether Atwood and Company A executed a confidentiality agreement, and if so, whether it contains a standstill provision that is still in effect and operates to preclude Company A from submitting a topping bid for the Company.

30.	On January 26, 2017, Mark Smith ("Smith"), the Chief Financial Officer ("CFO") of the Company, met with the CFO of a company referred to in the Registration Statement as "Company D" to discuss possible interest in a combination of the two companies. The Registration Statement fails to disclose whether Atwood and Company D executed a confidentiality agreement, and if so, whether it contains a standstill provision that is still in effect and operates to preclude Company D from submitting a topping bid for the Company.

31.	In March and April 2017, Company D and Company A, respectively, again expressed their interest to defendant Saltiel in a potential combination with Atwood.

32.	On April 18, 2017, the CEO of Company D informed Defendant Saltiel that Company D was prepared to make an all-stock proposal for Atwood representing an approximately 30% premium to the Company's then current share price, or an implied value of approximately $10.40 per Atwood share.

33.	The next day, the CEO of Ensco informed Defendant Saltiel that Ensco was interested in a potential acquisition of Atwood.

34.	On April 20, 2017, the CEO of Company A asked Defendant Saltiel whether Atwood would potentially be interested in a combination with Company A.   No further

discussions occurred between Atwood and Company A prior to announcement of the Proposed Transaction.

35.     On April 25, 2017, Company D sent Defendant Saltiel an indication of interest for Company D to combine with Atwood pursuant to which Company stockholders would receive Company D stock at an exchange ratio with an implied equity value of $11.00 per Atwood share, a 40% premium to the Company's April 24, 2017 closing stock price.

36.     On May 10, 2017, Defendant Saltiel provided a counterproposal to Company D to consider an all-stock acquisition by Company D that valued Atwood at a 66.5% premium to Atwood's May 10, 2017 closing share price and which provided for two members of the Board to be nominated to the Company D board following closing of a transaction.  Company D indicated that the proposed valuation was not within a range it found acceptable.

37.     On May 12, 2017, Ensco sent an indication of interest to the Company proposing an all-stock transaction in which Atwood stockholders would receive 1.278 Ensco Class A ordinary shares for each Atwood share, which valued the Company at an implied equity value of $10.17 per Atwood share, reflecting a 20% premium to Atwood's closing stock price on May 11, 2017.

38.     On May 26, 2017, Ensco submitted its final indication of interest in which Atwood stockholders would receive 1.60 Ensco Class A ordinary shares per Company share and that Ensco would appoint two Atwood directors to the Ensco board upon consummation of the Proposed Transaction.

39.     From May 26, 2017, through May 29, 2017, the parties and their advisors negotiated the remaining terms of the Merger Agreement.  On May 29, 2017, Goldman Sachs

rendered its fairness opinion and the Board approved the Merger Agreement. That evening, Ensco and Atwood executed the Merger Agreement.

<u>The Proposed Transaction</u>

40.    On May 30, 2017, Ensco and Atwood issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> London & Houston - 30 May 2017 - Ensco plc (NYSE: ESV) and Atwood Oceanics, Inc. (NYSE: ATW) jointly announced today that they have entered into a definitive merger agreement under which Ensco will acquire Atwood in an all-stock transaction. The definitive merger agreement was unanimously approved by each company's board of directors.
>
> Under the terms of the merger agreement, Atwood shareholders will receive 1.60 shares of Ensco for each share of Atwood common stock for a total value of $10.72 per Atwood share based on Ensco's closing share price of $6.70 on 26 May 2017. This represents a premium of approximately 33% to Atwood's closing price on the same date. Upon close of the transaction, Ensco and Atwood shareholders will own approximately 69% and 31%, respectively, of the outstanding shares of Ensco plc. There are no financing conditions for this transaction.
>
> Ensco expects to realize annual pre-tax expense synergies of approximately $65 million for full year 2019 and beyond. The combination is expected to be accretive on a discounted cash flow basis.
>
> Ensco Chief Executive Officer Carl Trowell said, "The combination of Ensco and Atwood will strengthen our position as the leader in offshore drilling across a wide range of water depths around the world - creating a broad platform that we can build upon in the future. This acquisition significantly enhances our high-specification floater and jackup fleets, adding technologically advanced drillships and semisubmersibles, and refreshing our premium jackup fleet to best position ourselves for the market recovery. We believe that the purchase price for these assets represents a compelling value to our shareholders, which is augmented further by expected synergies from the transaction."

<u>Insiders' Interests in the Proposed Transaction</u>

41.    Atwood insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are

conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and Atwood's public stockholders.

42. Notably, Defendants Golden and Wedemeyer have secured positions for themselves following completion of the Proposed Transaction. According to the Registration Statement, Ensco will appoint Defendants Golden and Wedemeyer to the Ensco board of directors upon consummation of the Proposed Transaction.

43. Further, Company insiders stand to reap substantial financial benefits for securing the deal with Ensco. If they are terminated in connection with the Proposed Transaction, Atwood's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| | | | Cash ($) | | | | Equity ($) | | | |
|---|---|---|---|---|---|---|---|---|---|
| Name(1) | Salary(1) | Bonus(2) | NC/NS Cash(3) | Accrued Dividend Equivalents(4) | Atwood Cash Units(5) | Perquisites/ Benefits(6) | (7) | (8) | Total ($) |
| Robert J. Saltiel | 2,442,000 | 3,017,375 | 1,322,750 | 127,941 | 1,212,657 | 41,459 | 4,487,356 | 2,195,977 | 14,847,515 |
| Mark W. Smith | 925,000 | 830,574 | 481,000 | 22,411 | — | 26,479 | 1,122,787 | 638,224 | 4,046,476 |
| Arthur M. Polhamus | 960,000 | 862,001 | 499,200 | 27,003 | — | 13,190 | 1,105,723 | 681,325 | 4,148,442 |
| Barry M. Smith | 932,500 | 837,308 | 484,900 | 26,321 | — | 39,318 | 1,076,266 | 663,889 | 4,060,502 |
| Walter A. Baker | 920,000 | 826,084 | 478,400 | 25,287 | — | 42,153 | 1,043,815 | 637,843 | 3,973,583 |

## The Registration Statement Contains Material Misstatements and Omissions

44. Defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Atwood's stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

45. Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's and Ensco's financial projections, relied upon by

Atwood's financial advisor, Goldman Sachs, in its financial analyses; (ii) the valuation analyses prepared by Goldman Sachs in connection with the rendering of its fairness opinion; and (iii) the background process leading up to the Proposed Transaction. Accordingly, Atwood stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Atwood's Financial Projections***

46.     First, the Registration Statement omits material information regarding the Company's financial projections provided by Atwood's management and relied upon by Goldman Sachs for its analyses.

47.     With respect to Atwood management's financial projections for Atwood (the "Atwood Forecasts"), the Registration Statement fails to disclose: (i) earnings; (ii) interest; (iii) income taxes; (iv) depreciation and amortization; (v) taxes; (vi) capital expenditures; (vii) changes in net working capital; (viii) proceeds from disposal of assets; and (ix) a reconciliation of all non-GAAP to GAAP metrics.

48.     With respect to Atwood management's financial projections for Ensco (the "Atwood Forecasts for Ensco"), the Registration Statement fails to disclose: (i) earnings; (ii) interest; (iii) income taxes; (iv) depreciation and amortization; (v) taxes; (vi) capital expenditures; (vii) mobilization costs; (viii) changes in net working capital; (ix) proceeds from disposal of assets; and (x) a reconciliation of all non-GAAP to GAAP metrics.

49.     With respect to the combined company forecasts, the Registration Statement fails to disclose: (i) earnings; (ii) interest; (iii) income taxes; (iv) depreciation and amortization; (v) taxes; (vi) capital expenditures; (vii) mobilization costs; (viii) proceeds from disposal of

assets; (ix) changes in net working capital; and (x) a reconciliation of all non-GAAP to GAAP metrics.

50.     The Registration Statement also discloses the financial forecasts prepared by Ensco's management.  Notably, the Atwood Forecasts for Ensco are significantly lower than Ensco management's own financial forecasts for Ensco, as set forth below:

| | Ensco Financial Forecasts | | | | | |
| | Case A | | | Case B | | |
| (in millions) | 2017E | 2018E | 2019E | 2017E | 2018E | 2019E |
|---|---|---|---|---|---|---|
| Revenue | $ 1,930 | $ 2,135 | $ 2,259 | $ 1,844 | $ 1,863 | $ 1,872 |
| Contract Drilling Expense | 1,210 | 1,404 | 1,479 | 1,144 | 1,258 | 1,360 |
| Capital Expenditures | 679 | 297 | 163 | 660 | 305 | 153 |
| Unlevered Free Cash Flow(1) | (201) | 184 | 370 | (196) | 92 | 164 |

| | Atwood Forecasts for Ensco (In millions) | | | | |
| | Year Ending December 31, | | | | |
| | 2017E(1) | 2018E | 2019E | 2020E | 2021E |
|---|---|---|---|---|---|
| Revenue | $ 1,360 | $ 1,841 | $ 1,831 | $ 1,982 | $ 2,155 |
| EBITDA(2) | $ 413 | $ 548 | $ 579 | $ 763 | $ 953 |
| Unlevered Free Cash Flow(3) | $ 141 | $ 171 | $ 360 | $ 685 | $ 831 |

The Registration Statement fails to disclose why the Atwood Forecasts for Ensco are drastically lower than Ensco management's financial forecasts for Ensco.  Such information is material to Atwood stockholders because Ensco common stock represents the only consideration being offered to them.

51.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following section of the Registration Statement: "Certain Unaudited Financial Forecasts Prepared by the Management of Atwood."

***Materially Omissions Concerning Goldman Sachs' Financial Analyses***

52.     The Registration Statement describes Goldman Sachs' fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Goldman Sachs' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Atwood's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman Sachs' fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Atwood's stockholders.

53.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis – 5-year DCF Model – Atwood Standalone*, the Registration Statement fails to disclose: (i) the range of illustrative terminal values for Atwood; (ii) the inputs and assumptions underlying the discount rates ranging from 13.0% to 15.0%; (iii) Atwood's net debt; and (iv) the number of fully diluted outstanding shares of Atwood provided by the management of Atwood.

54.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis – 5-year DCF Model – Ensco Standalone*, the Registration Statement fails to disclose: (i) the range of illustrative terminal values for Ensco; (ii) the inputs and assumptions underlying the discount rates ranging from 12.0% to 14.0%; (iii) Ensco's net debt; and (iv) the number of fully diluted outstanding shares of Ensco provided by the management of Atwood.

55.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis – 5-year DCF Model – Pro Forma*, the Registration Statement fails to disclose: (i) the range of illustrative terminal values for the combined company; (ii) the inputs and assumptions underlying the discount rates ranging from 12.0% to 14.0%; (iii) the calculated terminal year

estimate of EBITDA to be generated by the combined company; (iv) the combined company's pro forma net debt; and (v) the number of estimated pro forma fully diluted outstanding shares of the combined company following closing as provided by the management of Atwood.

56. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis – Asset Life Model – Atwood Standalone*, the Registration Statement fails to disclose: (i) the unlevered free cash flows Atwood could be expected to generate from its existing assets as of March 31, 2017 for their estimated remaining lives utilized by Goldman Sachs in this analysis; (ii) the inputs and assumptions underlying the discount rates ranging from 13.0% to 15.0%; (iii) Atwood's net debt; and (iv) the number of fully diluted outstanding shares of Atwood provided by the management of Atwood.

57. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis – Asset Life Model – Ensco Standalone*, the Registration Statement fails to disclose: (i) the unlevered free cash flows that Ensco could be expected to generate from its existing assets as of March 31, 2017 utilized by Goldman Sachs in this analysis; (ii) the inputs and assumptions underlying the discount rates ranging from 12.0% to 14.0%; (iii) Ensco's net debt; and (iv) the number of fully diluted outstanding shares of Ensco provided by the management of Atwood.

58. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis – Asset Life Model – Pro Forma*, the Registration Statement fails to disclose: (i) the unlevered free cash flows that the combined company could be expected to generate from the combined company's pro forma assets existing as of March 31, 2017 utilized by Goldman Sachs in this analysis; (ii) the inputs and assumptions underlying the discount rates ranging from 12.0% to 14.0%; (iii) the combined company's pro forma net debt; and (iv) the number of pro forma fully diluted outstanding shares provided by the management of Atwood.

59.     With respect to Goldman Sachs' *Selected Companies Analysis*, the Registration Statement fails to disclose the objective selection criteria Goldman Sachs used to select the companies, as well as the financial performance metrics for each selected company.

60.     Additionally, the Registration Statement fails to disclose any precedent transactions analysis performed by Goldman Sachs and if Goldman Sachs did not perform any precedent transactions analysis, the reasons why Goldman Sachs did not do so.

61.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

62.     The omission of this information renders the Registration Statement false and misleading, including, *inter alia*, the following section of the Registration Statement: "Opinion of Financial Advisor to Atwood."

***Material Omissions Concerning the Background Process***

63.     The Registration Statement fails to disclose or misstates material information regarding the background process leading up to the Proposed Transaction and potential conflicts of interest.

64.     The Registration Statement discloses that "[o]n May 25, 2017, Ensco and Atwood entered into a confidentiality agreement" and "[o]n May 26, 2017, Ensco and Atwood entered into an addendum to the confidentiality agreement containing customary standstill . . .

provisions." Registration Statement at 53. However, the Registration Statement fails to disclose whether Atwood entered into confidentiality agreements with Company A or Company D, and if so, whether the confidentiality agreements contain standstill provisions that are still in effect and/or "don't-ask-don't-waive" standstill provisions that are presently precluding these parties from making a topping bid for the Company.

65.     Additionally, the Registration Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Atwood's officers and directors, including who participated in all such communications, including such communications with regard to Defendants Golden's and Wedemeyer's future positions as directors of Ensco..

66.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

67.     Further, the Registration Statement omits material information regarding potential conflicts of interest of Goldman Sachs. Specifically, the Registration Statement fails to disclose Goldman Sachs' holdings in Atwood, Ensco, and their affiliates' stock.

68.     Full disclosure of all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

69.     Moreover, the Registration Statement provides that in April and May 2017, respectively, "[t]here were no further discussions with Company A prior to the announcement of

the merger," and "[t]here were no further discussions with Company D or its representatives prior to the announcement of the merger." Registration Statement at 50, 51. However, the Registration Statement fails to disclose whether there were any further discussions with either Company A or Company D following the announcement of the Proposed Transaction.

70.     The omission of this material information renders the Registration Statement false and misleading, including, inter alia, the following sections of the Registration Statement: (i) "Background of the Merger"; (ii) "Atwood's Reasons for the Merger; Recommendation of the Atwood Board of Directors;" and (iii) "Board of Directors and Executive Officers of Ensco Following the Merger."

71.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Atwood**

72.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

73.     During the relevant period, Defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make

the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

74.     By virtue of their positions within the Company, Defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by Defendants.  It misrepresented and/or omitted material facts, including material information about the sales process for the Company, the financial analyses performed by the Company's financial advisors, and the actual intrinsic standalone value of the Company.  Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

75.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.

76.     By reason of the foregoing, Defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

77.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure that Defendants' misconduct is corrected.

## COUNT II

**Claim for Violation of Section 20(a) of the Exchange Act
Against the Individual Defendants**

78.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

79.     The Individual Defendants acted as controlling persons of Atwood within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Atwood and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

80.     Each of the Individual Defendants and Ensco was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

81.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

82.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

83.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

84.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated  thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' conduct, Atwood's stockholders will be irreparably harmed.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor on behalf of Atwood, and against Defendants, as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Atwood stockholders;

C.      In the event that Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

DATED:  June 29, 2017.

                                        Respectfully submitted,


                                        _____/s/ Thomas E. Bilek_____
                                        Thomas E. Bilek
                                        TX Bar No. 02313525 / SDTX Bar No. 9338
                                        **THE BILEK LAW FIRM, L.L.P.**
                                        700 Louisiana, Suite 3950
                                        Houston, TX  77002
                                        (713) 227-7720

                                        *Attorneys for Plaintiff*

OF COUNSEL:

Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenaan
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY  10036
Tel: (212) 682-3025
Fax: (212) 682-3010